Kathleen L. Wieneke, Bar #011139
Laura Van Buren, Bar #031669
WIENEKE LAW GROUP, PLC
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: lvanburen@wienekelawgroup.com

*Attorneys for Defendants Lamb and Gibson*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| ALLISON OBREGON, an individual; ALLISON OBREGON on behalf of and as legal guardian and parent of her minor child, MC; ALLISON OBREGON as pending personal representative of THE ESTATE OF MICHEAL OBREGON; MEAGAN BRADY, individually; MEAGAN BRADY on behalf of and as legal guardian and parent of her minor child, MB;<br><br>Plaintiffs,<br><br>v.<br><br>MARK LAMB and JANE DOE LAMB, husband and wife; BRADY GIBSON and JANE DOE GIBSON, husband and wife; JOHN AND JANE DOES 1-X,<br><br>Defendants. | NO. 2:24-cv-01510-PHX-KML<br><br>**DEFENDANTS LAMB AND GIBSON'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**[1] |

After Defendants filed their Motion to Dismiss in this officer-involved shooting, the parties stipulated that Plaintiffs would dismiss certain claims and amend their complaint. *See* Docs. 11, 28. The Court denied Defendants' pending Motion to Dismiss as moot and Plaintiff filed a First Amended Complaint ("FAC"). (Docs. 29, 30). Despite Plaintiffs' amendments, however, certain claims in the FAC still fail as a matter of law. For the reasons set forth below, and pursuant to Fed. R. Civ. P. 12(b)(6), the Court should dismiss the following portions of the FAC:

---

[1] The parties conferred via email and telephone regarding issues raised in this Motion, but were unable to reach an agreement.

- Count I (wrongful death), to the extent it is based on a theory of negligence;
- Count III (gross negligence) in its entirety;
- Count IV (battery) as to Defendant Lamb;
- Count V (MB's IIED claim) in its entirety;
- Any state-law claims brought on behalf of the Estate of Michael Obregon.

## I. FACTS

### A. The Shooting of Michael Obregon

Plaintiff Allison Obregon, on behalf of herself, her minor daughter, and the decedent's estate, brings claims against Deputy Brady Gibson and Sheriff Mark Lamb related to the death of her husband, Michael Obregon ("Obregon"). She alleges that on March 16, 2023, Deputy Gibson conducted a stop of Obregon, who then decided to run from Gibson. (Doc. 30 ¶¶ 14–22.) Plaintiff alleges that Gibson fired at Obregon while Obregon's back was turned, and then fired additional shots while Obregon was on the ground. *Id.* ¶¶ 23–26. Gibson later told detectives that he fired only after Obregon pointed a weapon at him. *Id.* ¶ 77. PCSO personnel found a pistol on the ground several feet from Obregon's body. *Id.* ¶ 72.

### B. The Involvement of Meagan Brady and MB

The other plaintiff in this case is Meagan Brady on behalf of her minor daughter, MB. Megan Brady and MB both lived on the property where the shooting occurred. According to the FAC, "MB knew Michael, who was a family friend, very well." *Id.* ¶ 34. She heard gunshots and ran outside, where she observed Gibson "standing over Michael in an apparent frozen state." *Id.* ¶¶ 33–36. Gibson went to his patrol vehicle, "leaving MB with the responsibility of rolling Michael over onto his back and trying to revive him." *Id.* ¶ 43. She alleges that Gibson ordered her to stand next to Michael, forcing her to watch "her friend" die in front of her. *Id.* ¶¶ 44–45. She alleges that Gibson and other PCSO personnel "forced MB to stand near the feet of Michael's dead body for hours while an investigation took place." *Id.* ¶ 48. She claims that she "tried desperately to leave the scene and pleaded with the Defendants to move her to another location to be with her mother." *Id.* ¶ 52.

1    The body-worn camera footage of the Casa Grande Police Department ("CGPD) paints a drastically different picture.[2] Officer Fox was the first officer on scene; when he arrived, only Deputy Gibson (in a tan uniform) and a male civilian were standing over Obregon's body. (Ex. 1, Fox BWC at 0:31.) MB is not visible, and was certainly not "near the feet of Michael's dead body." *Id.*; Doc. 30 ¶ 48. Deputy Gibson said, "I got chest seals and stuff. I'm rendering aid. I just need an ambulance for him." (Ex. 1 at 0:42.) A male civilian and female were also standing nearby. *Id.* at 0:33. They identified themselves as Obregon's brother and his wife. *Id.* at 0:50-55. Officer Fox spoke with them, told them to stay back, and led them away from the crime scene. *Id.* at 0:55-1:45. Then, a young woman in a black tank top and white pants approached. *Id.* at 1:46. The young woman later identified herself as MB. (Ex. 3, Rush BWC at 5:49.)

MB led the older man and woman down the road and away from the house to talk to them. (Ex. 1, Fox BWC at 2:13.) No one tried to stop her or follow her. *Id.* Officer Fox returned to Obregon's body and assisted in rendering aid. *Id.* at 3:00. His camera then captured MB walking back toward the scene—again, without being escorted or compelled. *Id.* at 3:22-3:32. Officer Fox told her, "Just stay back there," but MB argued, "I live here." *Id.* at 3:30-35. For the next ten minutes, Officer Fox, along with other members of law enforcement and EMS, worked to save Obregon's life. *Id.* at 4:00-13:56. MB is not visible on camera, much less standing at Obregon's feet. *Id.* Rather, she was standing a distance away from the body, behind caution tape. *Id.* at 14:05.

Officer Reed—the second responding officer—had a lengthy interaction with MB while she was standing behind the caution tape. (Ex. 2, Reed BWC at 20:00-32:31.) She never asked to move away from the scene or expressed any distress at being near Obregon's body. *Id.* She stood calmly, close to the caution tape, watching the life-saving efforts on Obregon. *Id.* at 20:25. Rather than asking to move away, she was adamant that she should

---

[2] While Defendants cite to specific portions of the BWC, the exhibits contain the complete footage to give the Court (and the Plaintiffs) the complete picture of what occurred with MB after the shooting.

1  be allowed to cross through the crime scene to enter her yard and her house. *Id.* She said,
2  "Can I be let in my fucking yard now? It's been a long ass time." *Id.* at 23:52. Officer Reed
3  calmly and patiently explained that she could not go in the yard, and if she crossed the
4  caution tape, she would go to jail. *Id.* at 24:00. She responded, "It's my property. I have
5  nothing to do with this. I should have the right to go in my damn yard." *Id.* at 24:22. Another
6  officer explained, "this is a crime scene. So no, you're not going to go in the yard. And if I
7  have to—let me finish—I will remove you even from being in this area." *Id.* at 24:40. MB
8  expressed no desire to be removed from the area. Her demands to enter the yard continued
9  unabated. *See id.* at 30:00.

10  Perhaps the most informative body worn camera is that of Sgt. Rush. (Ex. 3.) When
11  he arrived at the scene, EMS was providing aid to Obregon, and MB was standing behind
12  the caution tape, with no officer nearby. *Id.* at 1:55. The footage shows that there was
13  nothing preventing her from turning around and walking down the road, toward the
14  ambulance. *Id.* at 2:05. Rather than doing that, MB (who was on the phone) said, "I need to
15  get in my yard. He said I am not allowed to cross because it is a crime scene and I don't
16  understand why I can't go that way and into my other gate." *Id.* at 2:05-11.

17  During this interaction, MB also provided Sgt. Rush with information about the
18  incident. She clearly stated that she does ***not*** know who the decedent was. *Id.* at 7:00-30.
19  She clarified that she did not witness anything, but rather was inside and heard shots, and
20  then ran outside. *Id.* at 8:45. Recounting her interaction with Deputy Gibson, she said, "And
21  he was like, 'he pulled out a gun so I had to react,' and I was like, "Obviously.' And then I
22  was just like, 'well just make sure he is ok, I can't have this man die in my freaking yard.'"
23  *Id.* at 8:50-9:20. At another point, MB can be heard on her cell phone recounting that she
24  told Gibson to cut Obregon's clothes off and "make sure he's alright," and Gibson, "was
25  doing that." *Id.* at 4:30. She complained on the phone that she was not being allowed in the
26  yard. *Id.* at 5:00.

27  Around 40 minutes after Officer Fox (the first responding officer) arrived, he said,
28  "sounds like homeowner mom just got on scene. She's on her way up." (Ex. 1, Fox BWC

4

at 41:30.) A PCSO deputy notes, "Mom is down here," and points down the road to his right. *Id.* at 46:11. A little over an hour after Officer Fox arrived, a deputy walked MB down the road towards the area where her mother was. *Id.* at 1:07:30. MB was not, as she now claims, forced to "stare at Michael's dead body for hours." Doc. 30 ¶ 49.

## II.  LEGAL STANDARDS

### A.  Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility is more than a "sheer possibility that a defendant has acted unlawfully." *Id*. If the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent," then they are not plausible. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). In reviewing a Rule 12(b)(6) motion, a court need not accept as true "conclusory statements" or "legal conclusions," *Iqbal*, 556 U.S. at 678, nor must it draw "unreasonable inferences" or "unwarranted deductions of fact," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B.  The Court May Consider Defendants' Exhibits

In ruling on this Motion to Dismiss, the Court should consider the body-worn camera footage of Officer Fox, Sgt. Rush, and Officer Reed, three CGPD employees who arrived at the scene and directly captured the events that underlie MB's claim. *See* Exhibits 1-3. The Ninth Circuit has upheld the district court's consideration of body camera footage when ruling on a motion to dismiss, specifically noting that the lower court acts within its discretion when it rejected plaintiff's conclusory allegations that contradicted the video evidence. *J. K. J. v. City of San Diego*, No. 20-55622, 2021 U.S. App. LEXIS 33778, at *13 (9th Cir. Nov. 15, 2021). Such is the case here. Likewise, courts in this district will also consider body camera footage without converting a Rule 12 Motion to a Rule 56 Motion. *See also Mayfield v. City of Mesa*, No. CV-22-02205-PHX-JAT, 2023 U.S. Dist. LEXIS 191351, at *14 (D. Ariz. Oct. 25, 2023) (considering body camera footage at the Rule 12

5

stage because it was quoted in the plaintiff's complaint and thus incorporated by reference); *Muhaymin v. City of Phx.,* No. CV-17-04565-PHX-SMB, 2019 U.S. Dist. LEXIS 26819, at *9 (D. Ariz. Feb. 20, 2019) (same).

### III. ALISON OBREGON'S NEGLIGENCE CLAIMS FAIL AS A MATTER OF LAW

#### A. Arizona Law Does Not Permit Claims for Negligent Use of Intentional Force

Count III ("Gross Negligence") fails under well-established Arizona Supreme Court precedent barring claims for negligent use of intentional force. *See Ryan v. Napier*, 425 P.3d 230 (Ariz. 2018). To the extent that Count I, titled "Wrongful Death Pursuant to A.R.S. §12-611, *et. seq.*," is based on negligence, then that claim fails as well.[3]

In *Ryan*, the Court decisively rejected the concept of a negligent use of intentional force, noting that "negligence and intent are mutually exclusive grounds for liability," and holding that "negligent use of intentionally inflicted force" is not a cognizable claim. *Id.* at 236. The Court preserved negligence claims only where the facts suggest that the defendant did not act intentionally; for example, an officer who accidentally dropped a police dog's leash, which led to a bite, rather than an officer who intentionally deployed a police dog. *Id.* at 238. The Court further held that there can be no negligence claim related to "a law enforcement officer's 'evaluation' of whether to intentionally use force against another person." *Id.* at 236. Courts in this district have repeatedly relied on *Ryan* to dismiss negligence claims arising out of police use of force. *See Davis v. City of Glendale*, 2023 U.S. Dist. LEXIS 145672 (D. Ariz. August 18, 2023) (granting motion to dismiss claims of negligent use of force and negligent evaluation of the use of force where officers shot the decedent); *Nees v. City of Phoenix*, 2022 U.S. Dist. LEXIS 232650 (D. Ariz. Dec. 28, 2022) (noting that "Arizona law does not allow recovery for negligence if liability is based upon an intentional act" and dismissing bystander claim relating to an officer-involved shooting);

---

[3] *See* Doc. 30 at ¶ 84 ("As a direct and proximate result of the unlawful, reckless, and grossly negligent actions of Gibson . . . ."); ¶ 86 ("Additionally, the acts of Gibson, as set forth above, demonstrate gross and wanton negligence . . . .").

1   *Harris v. City of Phoenix,* 2021 U.S. Dist. LEXIS 204452 (D. Ariz. October 22, 2021)
2   (holding that the City could not be vicariously liable for an officer's shooting of a decedent).

3   Here, the gross negligence claim in Count III is based partly on Deputy Gibson's
4   intentional use of deadly force. *See* Doc. 30 ¶¶ 107, 111. Under *Ryan v. Napier*, it fails to
5   state a claim.

6       **B.**    **Plaintiff Cannot State a Claim for Negligent Failure to Provide Medical**
7               **Aid**

8   Plaintiff also alleges that Gibson "fail[ed] to provide needed medical care to
9   Michael," instead "freezing and watching MB provide uneducated medical care to
10  Michael." Doc. 30 ¶ 113. This claim fails for three reasons.

11  First, the body-worn camera shows Gibson and other law enforcement officers—***not***
12  ***MB***—providing prompt and focused medical care to Obregon. That BWC controls over
13  Plaintiff's baseless accusations. As the U.S. Supreme Court has stated, "[w]hen opposing
14  parties tell two different stories, one of which is blatantly contradicted by the record, so that
15  no reasonable jury could believe it, a court should not adopt that version of the facts for
16  purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380,
17  127 S. Ct. 1769, 1776 (2007). The same is true for this Motion to Dismiss.

18  Here, when Officer Fox (the first officer on scene) arrived, Deputy Gibson told him,
19  "I got chest seals and stuff. ***I'm rendering aid***. I just need an ambulance for him." (Ex. 1,
20  Fox BWC at 0:30-42.) MB is not in sight and is certainly not providing medical care to
21  Obregon. After speaking to Obregon's family members, Officer Fox returned to Obregon's
22  body, where he and other law enforcement and emergency medical personnel spent at least
23  ten minutes working to save Obregon's life. *Id.* at 3:00–13:56. Sgt. Rush's BWC also
24  captures EMS, not MB, providing aid to Obregon. Ex. 3 at 1:55.

25  Plaintiff will likely argue that Gibson's failure to render medical aid, and her
26  "uneducated" attempts to do so, occurred before Officer Fox arrived on scene, and therefore
27  was not captured on video. Plaintiff, however, does not and cannot plead ***facts*** that would
28  show any such delay in medical care ***caused Obregon's wrongful death***.

Finally, Plaintiff cannot bring a claim for negligent failure to provide medical care because she did not raise it in her Notice of Claim. (Ex. 4, NOC). A Notice of Claim must contain "facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed." *See* A.R.S. § 12-821.01. A public entity or employee "necessarily cannot understand from a notice of claim the basis of any liability that might be based on facts that are unstated in the notice." *Haab v. County of Maricopa*, 219 Ariz. 9, 13 (App. 2008). When a plaintiff pursues a different theory in litigation than she raised in a notice of claim, the defendant is entitled to dismissal on the merits. *See Olivas v. Yavapai County*, No. 1 CA-CV 23-0637, 2024 Ariz. App. Unpub. LEXIS 790, *10 (App. Sep. 10, 2024) ("a notice of claim fails to satisfy statutory requirements if it sets forth facts different from those alleged in the complaint as the factual basis of the defendant's liability" (citing *Sanchez-Ravuelta v. Yavapai County*, 548 P.3d 347 (App. 2024)). Here, Plaintiff's Notice of Claim does not allege that Gibson's failure to provide medical aid caused or contributed to his death. *See* Ex. 4. For this additional reason, this portion of Plaintiff's gross negligence claim fails.

## IV. SHERIFF LAMB CANNOT BE VICARIOUSLY LIABLE FOR DEPUTY GIBSON'S USE OF FORCE

Because Plaintiff cannot bring a negligence-based claim against Deputy Gibson based on his use of force, she necessarily cannot bring a vicarious liability against Sheriff Lamb based on that theory, either. *See Laurence v. Salt River Project.*, 528 P.3d 139, 141 (2023) ("If the claim against the employee was dismissed for lacking merit, the court must also dismiss the respondeat superior claim.")

Plaintiff also cannot bring a vicarious liability claim against Sheriff Lamb based on her theory of **battery**. *See* Count IV (battery claim against "All Defendants"). This is because A.R.S. § 12-820.05(B) immunizes a public entity (including the sheriff) from liability for losses "that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action."

8

For the statute to apply, the law does not require a prior determination that the defendant committed a criminal felony. *Fernandez v. City of Phoenix*, No. CV 11-02001-PHX-FJM, 2012 WL 2343621, 2012 U.S. Dist. LEXIS 85268 at *10 (D. Ariz. June 20, 2012). Rather, for Section 12-820.05(B) purposes, the inquiry focuses on what the plaintiff alleged the defendant did, and whether, as pled, those actions constitute a criminal felony. Thus, this Court may assess whether the allegations in the FAC constitute a "criminal felony" under Arizona law; a prior judicial determination is not required. *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1234 (D. Ariz. 2003) ("[T]he Court finds that the Arizona Supreme Court would follow the reasoning of Judge Fidel, and allow A.R.S. § 12-820.05(B) to apply despite the lack of a prior criminal court finding that Scott's action constituted a felony."), citing *State v. Heinze*, 993 P.2d 1090, 1094-95 (Ariz. App. 1999) (determining an identically worded indemnification statute, A.R.S. § 41-621(K)(1), does not require a prior criminal court determination that the employee committed a felony).

The FAC alleges that Deputy Gibson shot Obregon without justification or cause. Viewing the allegations of the FAC in the light most favorable to the nonmoving party, Plaintiff Obregon alleges that Gibson committed, at minimum, felony aggravated assault under A.R.S. § 13-1203 and A.R.S. § 13-1204(A)(2). Given this, under A.R.S. § 12-820.05(B), Sheriff Lamb can only be liable for Deputy Gibson's actions if he "knew of [Deputy Gibson's] propensity for that action." *See also Ryan*, 425 P.3d at 237, ¶ 24; *Harris*, 2021 U.S. Dist. LEXIS at *3-4 ("[A] municipality cannot be held liable for its employee's intentional use of force unless it actually knows of the employee's propensity to commit that particular act.") (citing *Tucson Unified Sch. Dist. v. Borek*, 322 P.3d 181, 184, ¶ 8 (Ariz. App. 2014)). Here, the FAC does not plead any facts that would show Deputy Gibson had a propensity for felony aggravated assault. It certainly pleads no facts that Sheriff Lamb knew of any such propensity. By failing to plead these facts, Plaintiff Obregon has doomed any vicarious liability claim against the Sheriff arising out of battery.

Plaintiff cannot excuse her failure by arguing that she has not yet had the chance to conduct discovery. "[A] plaintiff is not entitled to conduct discovery to determine the

factual basis, if any, for its claims." *G&G Closed Circuit Events LLC v. Villegas*, No. CV-22-01892-PHX-ROS, 2023 U.S. Dist. LEXIS 99496, at *1 (D. Ariz. June 6, 2023). When a plaintiff states that "it cannot pursue its claims absent discovery," the claim should be dismissed. *Id.* Because Plaintiff Obregon did not allege facts showing knowledge of a propensity in her FAC, the battery claim fails as to Sheriff Lamb.

## V.  MB'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM (COUNT V) FAILS

MB's IIED claim is based on the premise that MB suffered mental anguish "as a result of seeing Michael get shot multiple times and then being forced [to] remain with Michael's body while he bled to death and for hours thereafter." Doc. 30 ¶ 59. The BWC proves that this is false; the Court need not and should not support Plaintiff's bald allegations to the contrary. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

MB told officers that she did not know Obregon. (Ex. 2, Rush BWC at 7:00-30.) She did not see the shooting. *Id.* at 8:45. The body-worn camera footage shows that she was not forced to stand by Obregon's body, much less "for hours." Rather, she left the scene, willingly came back, and stood at the edge of the caution tape, demanding to be allowed to enter her yard and house. EMS and law enforcement, not MB, rendered medical aid.

Recovery for IIED is only permitted where: (1) the conduct by the defendant is "extreme" and "outrageous," (2) the defendants either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from the conduct; and (3) severe emotional distress results from the defendant's conduct. *See Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580 (1987). According to the Restatement (Second) of Torts S 46 cmt. D:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, ***"Outrageous!"***
>
> (emphasis added)

The facts pled in this case do not rise to the level needed to meet any of the three prongs set forth in *Ford*—particularly when viewed in light of the body-worn camera footage.

## VI. PLAINTIFF STILL INMPERMISSIBLY BRINGS SURVIVAL ACTIONS

Plaintiff's original complaint brought state-law survival actions on behalf of Obregon's Estate under A.R.S. § 14-3110. *See* Doc. 1-2 ¶¶ 80, 118-123. Defendants argued that the survival actions fail as a matter of law. (Doc. 11 at 6:16-7:13). Plaintiff then stipulated to dismiss them. (Doc. 28 at 1:25). While Plaintiff has removed the explicit reference to the survival action statute, A.R.S. § 14-3110, her wrongful death and battery claims (Counts I and IV) are still brought by Plaintiff "on behalf of the Estate." (Doc. 30 ¶¶ 79, 117). These claims fail under Arizona law.

Arizona's survival statute (A.R.S. § 14-3110) excludes damages for pain and suffering of the decedent, stating "Every cause of action . . . shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representatives of such person, ***provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed***." Case law has extended the statute to exclude damages for loss of enjoyment of life (hedonic damages). *See Quintero v. Rodgers*, 221 Ariz. 536, 539, 212 P.3d 874 (App. 2009) ("Therefore, we find A.R.S. § 14-3110 does not allow Quintero to recover damages for Soto's loss of enjoyment of life resulting from Rodgers' negligence.") The single category of damages left—economic loss damages—are only available if they were sustained from the time of the incident until the decedent's death. *Rodriguez v. Lytle*, No. 1 CA-CV 20-0048, 2021 Ariz. App. Unpub. LEXIS 174, at *6 (App. Feb. 16, 2021). Here, where Mr. Obregon died on the scene, there cannot be any economic loss damages. Because Plaintiff Obregon has not pled any recoverable damages under A.R.S. § 14-3110, the survival action claims fail.

## VII. CONCLUSION

Plaintiffs have now had their opportunity to amend their complaint, but the same deficiencies remain. Therefore, the Court should dismiss the following portions of the First Amended Complaint:

- Count I (wrongful death), to the extent it is based on a theory of negligence;
- Count III (gross negligence) in its entirety;
- Count IV (battery) as to Defendant Lamb;
- Count V (MB's IIED claim) in its entirety;
- Any state-law claims brought on behalf of the Estate of Michael Obregon.

DATED this 4th day of October, 2024.

                                              WIENEKE LAW GROUP, PLC

                              By:   */s/ Laura Van Buren*
                                          Kathleen L. Wieneke
                                          Laura Van Buren
                                          1225 West Washington Street, Suite 313
                                          Tempe, Arizona 85288
                                          *Attorneys for Defendants Lamb and Gibson*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

> Robert T. Mills
> Sean A. Woods
> MILLS + WOODS LAW, PLLC
> 5055 North 12th Street, Suite 101
> Phoenix, Arizona 85014
> *Attorneys for Plaintiffs*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is NOT a registered participant of the CM/ECF System:

>    N/A

By:   */s/ Lauren Rasmussen*