# EXHIBIT 1
# (Non-Electronic Exhibit)
# (Under Seal)

# EXHIBIT 2
# (Non-Electronic Exhibit)
# (Under Seal)

# EXHIBIT 3
# (Non-Electronic Exhibit)
# (Under Seal)

# EXHIBIT 4



September 11, 2023

**SENT VIA CERTIFIED MAIL / IN-PERSON**

| Pinal County, Arizona<br>Clerk of the Board of Supervisors<br>P.O. Box 827<br>Florence, AZ 85132<br><br>Pinal County, Arizona<br>135 N. Pinal Street,<br>Florence, AZ 85132<br><br>Sheriff Mark Lamb<br>Clerk of the Board of Supervisors<br>P.O. Box 827<br>Florence, AZ 85132 | Sheriff Mark Lamb<br>135 N. Pinal Street,<br>Florence, AZ 85132<br><br>Sheriff Mark Lamb<br>971 N Jason Lopez Circle Building C<br>Florence, AZ 85132<br><br>Sheriff Mark Lamb<br>540 W FAIRFIELD ST<br>SAN TAN VALLEY, AZ 85143-1203 | Deputy Brady Gibson #2366<br>135 N. Pinal Street,<br>Florence, AZ 85132<br><br>Deputy Brady Gibson #2366<br>971 N Jason Lopez Circle Building C<br>Florence, AZ 85132<br><br>Deputy Brady Gibson #2366<br>18617 E ARROWHEAD TRL<br>QUEEN CREEK, AZ 85142-5553 |
|---|---|---|

**Re:   Notice of Claim – Allison Obregon, individually, as the Widow and Personal Representative of the Estate of Micheal Obregon, and as the mother of minor child, "MC"**

To Whom It May Concern:

Pursuant to A.R.S. § 12-821.01, this Notice of Claim is submitted by **Allison Obregon, individually, as the Widow and Personal Representative of the Estate of Micheal Obregon, and as the mother of minor child, "MC"** (collectively, the "Claimants") for the wrongful death and murder of Micheal Obregon ("Obregon") occurring at the hands of the Pinal County Sheriff's Department ("PCSO"), PCSO Sheriff Mark Lamb ("Lamb"), PCSO Deputy Brady Gibson Badge #2366 ("Gibson") and various officers of the PCSO (the "Incident").

Specifically, this NOC is being brought against: Pinal County ("County"), PCSO Sheriff Mark Lamb ("Lamb"), PCSO Deputy Brady Gibson Badge #2366 ("Gibson") and various officers of the PCSO (collectively, the "Offenders").

This NOC is being brought because of the above-named parties' negligence and violation of Obregon's Civil Rights culminating in the murder and wrongful death of Micheal Obregon. The Claimants, via their counsel and otherwise, are still investigating the events in question.



otherwise, are still investigating the events in question. Accordingly, this Notice of Claim is based largely on the information currently available including without limitation a review of certain PCSO reports and video footage.

***THIS NOTICE OF CLAIM IS BEING SUBMITTED BASED ON THE INFORMATION MADE AVAILABLE BY THE PCSO. THE PCSO IS THE SOLE CUSTODIAN OF ALL RECORDS PERTAINING TO POLICIES, PROCEDURES, AND THE MURDEROUS AND NEGLIGENT ACTIONS OF PSCO OFFICERS AND DEPUTIES.***

***THROUGH A PUBLIC RECORDS REQUEST, THE PCSO HAS NOT PROVIDED THE FULL NAMES OF ALL POTENTIAL OFFICERS/DEPUTIES RESPONSIBLE FOR THE ACTS AND OMISSIONS DETAILED HEREIN. THEREFORE, THE CLAIMANTS RESERVE THE RIGHT TO AMEND THEIR NOTICE OF CLAIM OR COMPLAINT IN A COURT OF COMPETENT JURISDICTION BASED ON THE LACK OF INFORMATION CURRENTLY IN THE PCSO'S SOLE CUSTODY AND CONTROL BEING WITHHELD CLAIMANTS BASED ON EQUITABLE LEGAL THEORIES INCLUDING THE DISCOVERY RULE.***

***IF FOR ANY REASON YOU BELIEVE THIS NOTICE OF CLAIM IS NOT IN COMPLIANCE WITH A.R.S. § 12-821.01, OR IF ADDITIONAL FACTS/INFORMATION IS NEEDED, PLEASE CONTACT UNDERSIGNED COUNSEL AT THE NUMBER LISTED BELOW.***

The Claimants are putting the Offenders, their employees, agents, and officers on notice for the potential following claims without limitation: negligence; gross negligence; recklessness; battery, civil rights violations under 42 U.S.C. § 1983 for unreasonable search and seizure and violations of equal protection of the law under the Fourth and Fourteenth Amendments and violations of due process rights under the fifth and fourteenth amendments; false arrest; intentional infliction of emotional distress; negligent infliction of emotional distress; negligent supervision, hiring, and training; civil conspiracy; failure to train and supervise; wrongful death under A.R.S. § 12-611, *et. seq.*, and a claim for survivorship under A.R.S. § 14-3110. These claims are being brought against the Offenders listed above.

The Claimants seek an award of damages reasonably calculated to compensate for the injuries they suffered in connection with the wrongful death of Micheal Obregon on March 16, 2023.

Furthermore, the terms and content of this NOC are subject to Rule 408 of the Arizona Rules of Evidence and Rule 408 of the Federal Rules of Evidence.

## I.     FACTUAL BASIS ESTABLISHING LIABILITY

Micheal Obregon was visiting a friend's house to work on vehicles. Gibson saw Obregon driving his dirt bike and decided to harass him as Gibson had previously had multiple run-ins with Obregon. Even though Obregon was on private property when Gibson approached him, Gibson did not care. Gibson stopped Obregon, made him pull out his identification and began a conversation with Obregon. After about five minutes of discussion, Obregon decided to run away from Gibson. Gibson, who had already had it in his mind that Obregon would not



get away from him, pulled his lethal firearm – a Glock 17 .9mm handgun – and began firing it at Obregon – whose back was turned to Gibson. Gibson, after already shooting Obregon multiple times, walked up to his body on the ground and fired even more shots at Obregon.

Obregon was not threating Gibson in any way.

Multiple witnesses either saw the interaction or the immediate aftermath. Nobody saw Obregon with a weapon.

In fact, one of the witnesses ("Witness") – who is a minor – came running to Obregon and Gibson after the shooting. The Witness reports that Gibson was just standing over Obregon in a frozen state. Gibson was not performing life-saving measures on Obregon. Gibson told the Witness that Obregon had pulled a gun on Gibson and that is why Gibson shot. The Witness looked around the scene and seeing that there was no gun anywhere near Obregon, not in Obregon's hands, and – in fact – nowhere in the surrounding areas, yelled at Gibson asking him where the gun is. Gibson had no response. The Witness then forcefully told him that Obregon needed medical help. At that point, Gibson walked away back to his police vehicle, leaving the minor Witness with the responsibility of rolling Obregon onto his back and trying to revive him. The Witness was a family member of Obregon's friend and knew Obregon well. The Witness was forced to watch her family friend die in front of her. Another witness upon information and belief observed the entire interaction between Gibson and Obregon and reported to the family that Obregon never brandished or otherwise held a weapon during the interaction – that Gibson just started firing at Obregon as he was running away. Other witnesses have reported that they saw Gibson stand directly over Obregon, state "I bet you're scared now," and then shoot Michael two or three times in the torso.

Ring camera video ("Video") was recovered from a neighboring house that captured these events. The Video is from a distance and not all events are visible. However, the Video clearly shows Obregon peacefully interacting with Gibson. In fact, it shows Obregon providing his documents to Gibson upon request. The Video received begins at 6:33 PM. From 6:33PM until 6:35:52PM, Obregon and Gibson are seen together having a discussion. Both Gibson and Obregon move around slightly. It appears that Gibson goes back to his vehicle's driver side door once or twice. At 6:36:06PM, Obregon begins to run away through the gate on the property. Gibson can be observed following and moving the gate out of the way. Gibson is then shown firing his lethal weapon at Obregon multiple times. Only seven (7) of the ten (10) shots fired by Gibson can be observed on the Video.

Again, Gibson fired ten shots at Obregon. A Smith and Wesson pistol was "found" on the scene and it was determined that no bullets were fired by that weapon.

According to the Medical Examiner's Report, Obregon suffered seven (7) gunshot wounds of which the following five (5) fragments were recovered:

- -2673-10, Projectile fragment removed from the left thigh.
- -2673-11, Projectile fragment removed from the right axilla.
- -2673-12, Projectile fragment removed from the right scapula.



- -2673-13, Projectile fragment removed from the left upper chest.
- -2673-14, Projectile fragment removed from the right shoulder.

In Gibson's interview with Detectives (the "Interview"), he stated that Obregon tripped while running from him and ended up in a prone position. A prone position simply means that a person is on his belly/front rather than lying on his back. Gibson told Detectives that Obregon was not trying to get up or fight with him.

Gibson further reports that he stood "atop of Micheal." Gibson then reports that he got off Obregon and began to back away with his gun drawn. Gibson then claims that Obregon rolled to his side and pointed a weapon at Gibson. Gibson then began firing at Obregon. Gibson reports that he saw Obregon's weapon fall to the ground beside Obregon – the same "weapon" that none of the witnesses ever saw.

## II.   LEGAL BASIS OF CLAIMS

### a. VIOLATION OF EQUAL PROTECTION OF THE LAW UNDER FOURTEENTH AMENDMENT

By the actions described above, the entities and individuals to whom this Notice of Claim is addressed violated Micheal Obregon's right to freedom from unreasonable seizure and excessive force as protected by the Fourth Amendment of the United States Constitution and his right to equal protection of the law as protected by the Fourteenth Amendment to the United Stated Constitution.

### b. 42 U.S.C. § 1983- EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT

42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from the use of excessive force by law enforcement officers. The Offenders, while acting in their official capacity and individual capacities and under the color of law, violated Leontae Kirk's rights to freedom from unreasonable seizures.

Under Article 2, Section 8 (Rights to Privacy) and 13 (Equal Privileges and Immunities) of the Arizona Constitution: By authorizing, acquiescing in, employing, failing to adequately train or supervise those directly involved in and/or participating in or being deliberately indifferent to the force used on Micheal Obregon. The entities and individuals to whom this Notice of Claim is addressed violated Micheal Obregon's right to freedom from unreasonable seizure. Micheal Obregon was also subjected to unreasonable seizure based on the Offenders' use of excessive force. The Offenders had a duty to refrain from using excessive force in specific circumstances. The Offenders used excessive force by shooting Obregon for no reason. He was not brandishing a weapon nor was a weapon near his body until after witnesses were controlled and moved away from the homicide scene. Somehow, after that point, a "weapon" appeared on the ground.



Obregon was neither a threat of death nor of great bodily harm to the Offenders, nor was he engaging in any conduct that justified the extent of force used by the Offenders.

By shooting Obregon first and asking questions later, the Offenders violated Obregon's rights. The Offenders had available to them less lethal implements. They could have done a million things other than what they chose to do.

### c. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To sue for intentional infliction of emotional distress, a claimant must show: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended or recklessly disregarded the certainty that the claimant would suffer emotional distress; and (3) the claimant suffered emotional distress. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.,* 183 Ariz. 550, 553, 905 P.2d 559, 562 (Ct. App. 1995).

The Offenders engaged in extreme and outrageous conduct by shooting and killing Obregon without proper justification. Gibson clearly saw that Obregon was not brandishing a weapon, but has chosen to state otherwise. Through their conduct, the Offenders either intended or completely disregarded Obregon's dignity and constitutional rights and knew their conduct would lead Claimants to suffer emotional distress. Thus, the Offenders are liable for intentional infliction of emotional distress.

### d. WRONGFUL DEATH

When death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under such circumstances as amount in law to murder in the first or second degree or manslaughter.

### e. EXCESSIVE FORCE

Under A.R.S. § 13-410, the use of deadly force by a peace officer against another is justified only when the peace officer reasonably believes that it is necessary (1) to defend himself or a third person from what the peace officer reasonably believes to be the use or imminent use of deadly force; (2) to effect an arrest or prevent the escape from custody of a person whom the peace officer reasonably believes (a) has committed, attempted to commit, is committing or is attempting to commit a felony involving the use or a threatened use of deadly weapon, (b) is attempting to escape by use of a deadly weapon, (c) through past or present conduct of the person which is known by the peace officer that the person is likely to endanger human life or inflict serious bodily injury to another unless apprehended without delay, or (d) is necessary to lawfully suppress a riot if the person or another person participating in the riot is armed with a deadly weapon.

The Offenders had a duty to refrain from using excessive force in specific circumstances. Obregon was neither a threat of death or great bodily harm to the officers, nor was he engaging in conduct that justified the extent of force used by the officers.



None of the circumstances required under the statute were present when the Offenders killed Obregon.

### f. BATTERY PURSUANT TO A.R.S. § §12-611 et seq., 14-3110

The Offenders intentionally shot Obregon causing harmful or offensive contact with Obregon. As a direct and proximate result of this harmful or offensive contact, Obregon died. The Offenders' acts constitute a battery upon Obregon in the above-described bodily contact was intentional, unauthorized, or grossly offensive in nature. The acts and omissions of the Offenders were intentional, negligent, reckless, and unwarranted, and without any just cause or provocation.

As a direct and proximate result of the Offenders conduct, Obregon was deprived of his liberty, and was ultimately killed. The conduct described in this Notice of Claim was undertaken by the Offenders within the scope of their employment and under color of law such that their employer, PCSO – and Pinal County – is vicariously liable for their actions.

### g. NEGLIGENT HIRING, SUPERVISION, RETENTION, AND/OR TRAINING

Pursuant to A.R.S. § §12-611 et seq., 14-3110, PCSO was negligent in their hiring, supervision, retention, and/or training of the Offenders. The acts, omissions, and conduct of the Offenders as described in this Notice of Claim were the direct and proximate cause of the injuries and death of Obregon and violated Obregon's constitutional, statutory and common law rights as guaranteed by the law and Constitution of the State of Arizona.

### h. NEGLIGENCE

The basic elements of actionable negligence are a duty owed to the plaintiff, a breach thereof and an injury proximately caused by the breach. *Ballesteros v. State*, 161 Ariz. 625, 627, 780 P.2d 458, 460 (App. 1989).

"A duty is a matter of 'the relation between individuals which imposes upon one a legal obligation for the benefit of another.'" *Id.* (internal citations omitted). A duty is breached when the defendant fails to conform to the standard of care reasonable under the circumstances. *Ballesteros*, 161 Ariz. at 627.

Pursuant to A.R.S. § §12-611 et seq., 14-3110, the Offenders, while acting as agents and employees for the PCSO, owed a duty to Obregon to perform their responsibilities as officers of the law without the use of excessive force. The Offenders, while acting as agents and employees for PCSO, owed a duty to Obregon to act reasonably under the circumstances. The Offenders' use of deadly and excessive force upon Obregon constitutes recklessness and/or negligence for which the Offenders are individually liable. The Offenders' conduct, in not using non-lethal force that was readily available, constitutes negligence and gross negligence for which the Offenders are individually liable. In taking the actions as described above, the Offenders breached their duty to refrain from such unreasonable and indifferent conduct.

### i. GROSS NEGLIGENCE

Pursuant to A.R.S. § §12-611 et seq., 14-3110, the Offenders' acts and omissions constitute reckless and/or gross negligence for which the individual Offenders are liable. The actions of the Offenders, as described above,



were taken with such reckless disregard for the life and safety of Obregon so as to be a conscious violation of Obregon's rights to life and liberty. As a direct and proximate result of the individual Offenders' conduct, Obregon was deprived of his life and liberty and was ultimately killed.

### III.   SPECIFIC AMOUNT FOR WHICH CLAIM CAN BE SETTLED

As a result, the family of Michael Obregon, including **Allison Obregon, individually, as the Widow and Personal Representative of the Estate of Micheal Obregon, and as the mother of minor child, "MC"** intend to file an action in Maricopa County Superior Court or other appropriate forum in both state and federal court wherein the family will seek, among other things, compensatory damages, special damages, hedonistic damages, and pursuant to federal law, punitive damages. The family will also seek, pursuant to federal law, an award of incurred attorney's fees and costs.

Should this matter proceed to litigation, the family will obtain compensatory damages that will include, without limitation:

> a. An award of compensatory damages to the family for the death of Michael Obregon. It is expected that this will be amount approaching $25,000,000 for depriving his mother of the continued loving familial relationship she shared with Obregon, as well as the significant emotional and physical struggle she will be now forced to endure without consortium she could have shared for many years to come; and,

> b. An award of compensatory damages to the family for the extreme pain and suffering they have sustained due to the wrongful conduct of these defendants. It is expected that this will be an amount approaching $25,000,000 for the ongoing emotional toll this continues to exact on the family of Micheal Obregon.

In addition to their state law claims, the family of Micheal Obregon intends to assert claims pursuant to federal law, most particularly 42 U.S.C. § 1983 et seq. Under federal law, in addition to compensatory damages, the family will also be entitled to an award of punitive damages and his incurred attorney's fees and costs. See e.g., 42 U.S.C. §1988. Given the gravity of the wrongful conduct, it is foreseeable that these awards will in and of themselves be substantial.

### Should the family be forced to litigate, it is likely they will obtain a jury verdict that may exceed $50,000,000.

If this matter continues to trial, the family will seek damages for wrongful death, loss of the companionship, society affection, care, protection, guidance of a husband and father, and for pain, grief, sorrow, anguish, stress, shock, and mental suffering resulting from the loss of their husband and father. Certain elements of damages may also be the subject of expert testimony. Accordingly, it is in the best interest of the family of Micheal Obregon to resolve this matter short of litigation in a way that provides solace during this terribly emotional and difficult time and for years to come. Moreover, A.R.S. § 12-821.01 requires the Claimants to include in their Notice of Claim a specific dollar amount for which their claims can be settled;



For Allison Obregon that amount is two million five hundred thousand dollars ($2,500,000).

For the Estate of Michael Obregon that amount is two million five hundred thousand dollars ($2,500,000).

For MC that amount is two million five hundred thousand dollars ($2,500,000).

                    Very truly yours,

                    **MILLS + WOODS LAW**

                    Sean A. Woods

SAW: