Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| ALLISON OBREGON, an individual; ALLISON OBREGON on behalf of and as legal guardian and parent of her minor child, MC; ALLISON OBREGON as pending personal representative of THE ESTATE OF MICHAEL OBREGON; MEAGAN BRADY, individually; MEAGAN BRADY on behalf of and as legal guardian and parent of her minor child, MB,<br><br>Plaintiffs,<br><br>vs.<br><br>MARK LAMB and JANE DOE LAMB, husband and wife; BRADY GIBSON and JANE DOE GIBSON, husband and wife; John and Jane Does I-X,<br><br>Defendants. | Case No.: 2:24-cv-01510-DJH<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS LAMB AND GIBSON'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

Through undersigned counsel, Plaintiffs hereby submit their Response to Defendants Lamb and Gibson's Motion to Dismiss Plaintiffs' First Amended Complaint ("Defendants' Motion") filed by Defendants Lamb and Gibson (collectively, "Defendants"). This Response is supported by the Memorandum of Points and Authorities that follows.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. LEGAL STANDARDS

The legal standard for motions to dismiss pursuant to Rule 12(b)(6) are regularly cited and well known to this Court. "[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted).

When resolving a motion to dismiss, a Court must accept as true all factual allegations in the complaint and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Further, in the context of a motion to dismiss, the court properly resolves any doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

The probability of success at trial should not be considered, as "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal citation omitted). Facts plead are assumed to be true, as "Rule 12(b)(6) does not countenance … dismissals based on a

judge's disbelief of a complaint's factual allegations." *Id.* "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Consequently, motions to dismiss are disfavored and are to be granted only if there is no cognizable factual or legal basis for the claim.

"[L]eave to amend must be given freely and liberally." *Ty Kirkpatrick v. Hubman*, No. CV-21-01048-PHX-DJH, at *8 (D. Ariz. Mar. 1, 2023) (emphasis added); *see also*, *e.g.*, *Olivas v. Nevada, ex rel. Dep't of Corr.*, 856 F.3d 1281, 1284 n.2 (9th Cir. 2017) (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003)); *see also* Fed. R. Civ. P. 15(a)(2). "[T]he Ninth Circuit has stated that Fed. R. Civ. P. 15(a)'s policy that leave to amend must be 'freely given when justice so requires,' must be applied with '***extreme liberality***' . . . ." *Keller v. United States*, No. CV-11-02345-PHX-PGR, at *5 (D. Ariz. June 28, 2016) (emphasis added) (internal citations omitted) (first quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962); and then quoting *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 709 (9th Cir.2001)). Leave to amend is especially appropriate when, as is the case here, it is not beyond the scheduling order deadline for amending complaints and joining parties. *See Greenburg v. Wray*, No. CV-22-00122-PHX-DLR, at *1 (D. Ariz. Jan. 9, 2023).

If this Court decides that Defendants' Motion should be granted in part or in full, Plaintiffs respectfully request leave to further amend the First Amended Complaint (the "FAC") to address any deficiencies determined by this Court.

## II. PLAINTIFF ALLISON OBREGON'S NEGLIGENCE CLAIMS SURVIVE DISMISSAL.

Defendants contend that Count I of the FAC (for wrongful death) – to the extent it is premised on negligence – and Count III (for gross negligence) (collectively, "Allison's negligence claims") fail because they are based on Defendant Gibson's intentional use of force. While Defendants correctly note that "'negligence and intent are mutually exclusive grounds for liability'" and that "'negligent use of intentionally inflicted force' is not a cognizable claim," *see* Defs.' Mot. 6:12-13 (quoting *Ryan v. Napier*, 425 P.3d 230, 236, ¶¶ 20-21 (Ariz. 2018)), Defendants are simply wrong that these propositions bar Allison's negligence claims.

Defendants are wrong, because the negligent conduct alleged therein is independent of Defendant Gibson's intentional use of force, and/or is plead in the alternative. Indeed, the court in *Ryan v. Napier*, on which Defendants rely, conceded that, "[t]o be clear, plaintiffs may plead a negligence claim for conduct that is ***independent*** of the intentional use of force or plead negligence and battery as alternate theories if the evidence supports each theory." 425 P.3d at 238, ¶ 31 (emphasis added).

Here, Allison's negligence claims contain allegations of negligent conduct that are independent of Defendant Gibson's intentional use of force. For example, Plaintiffs allege that Gibson was grossly negligent "in not using non-lethal force that was readily available," FAC ¶ 111, and by "failing to provide needed medical care to Micheal, and instead freezing

4

and watching MB provide uneducated medical care" to him, FAC ¶ 113; *see also* FAC ¶¶ 35-47.  Accordingly, Allison's negligence claims are for conduct that is independent of Defendant Gibson's intentional use of force, and thus must survive dismissal.

      Defendants also argue that Plaintiffs cannot state a claim for negligent failure to render medical care aid, because the body-worn camera videos show Defendant Gibson and other officers rendering aid.  Citing *Scott v. Harris*, 550 U.S. 372, 380 (2007), they contend that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Defs.' Mot. 7:13-16.  Of course, as the stated language makes clear, that is the standard at **summary judgment** – not for a motion to dismiss.  As set forth in greater detail in **§ 1**, *supra*, at this stage the Court must accept as true all factual allegations in the FAC and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Further, in the context of a motion to dismiss, the court properly resolves any doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

      Regardless, as Defendants themselves concede, there is no body-worn camera footage of the events prior to the Officer Fox's arrival on the scene.  *See* Defs.' Mot. 7:25-27.  The FAC's detailed allegations of Defendant Gibson's negligent failure to render aid are largely contained in ¶¶ 35-47, and Defendant Gibson is the only officer mentioned in those allegations.  Thus, a reasonable inference from those allegations is that they occurred in the time period prior to Officer Fox's arrival.

Defendants also argue that "Plaintiff[s] . . . cannot plead facts that would show any such delay in medical care caused [Micheal]'s wrongful death," Defs.' Mot. 7:27-28, but they do not explain why this is the case. Moreover, this is contrary to the FAC, which sets forth in detail Defendant Gibson's negligent conduct in failing to render medical aid, *see* FAC ¶¶ 35-47, and alleges that such conduct was a cause of Michael's wrongful death, *see* FAC ¶¶ 112-15 ("Gibson, in failing to provide needed medical care to Michael, . . . breached []his duty. . . . As a direct and proximate result of [Defendant] Gibson's breach, Micheal . . . lost his life.").

Finally, Defendants claim that "Plaintiff cannot bring a claim for negligent failure to provide medical care because she did not raise it in her Notice of Claim." Defs.' Mot. 8:1-2 (citing Defs.' Mot., Ex. 4). Not so. The Notice of Claim states that Defendant Gibson "was just standing over [Micheal] in a frozen state" and "not performing life-saving measures on [him]," and that he had to be "forcefully told [ ] that [Micheal] needed medical help." Defs.' Mot., Ex. 4 at 3. Moreover, it states Defendant Gibson "le[ft] the minor Witness with the responsibility of rolling [Micheal] onto his back and trying to revive him." *Id.* Finally, in the subsection titled "Gross Negligence," the Notice of Claim summarizes the above, stating that "[Defendant Gibson's] acts and omissions constitute reckless and/or gross negligence for which the individual Offenders are liable. The actions of [Defendant Gibson], as described above, were taken with [ ] reckless disregard for the life and safety of [Micheal] . . . . As a direct and proximate result . . ., [Micheal] was deprived of his life . . . and was ultimately killed." *Id.* at 6-7. The Notice of Claim sufficiently put Defendant

Gibson on notice of Plaintiffs' allegations that his negligent failure to provide Micheal with medical care was a cause of the latter's wrongful death.

For all the foregoing reasons, Allison's negligence claims are sufficiently pled and must survive dismissal. Because Defendants also argue that her negligence claims against Defendant Lamb, based on respondeat superior, fail for the same reasons they argued that her negligence claims against Defendant Gibson fail, Allison's negligence claims against Defendant Lamb also survive for the same reasons set forth above.

### III.  MB'S CLAIM FOR IIED SURVIVES

Plaintiffs have pled sufficient factual allegations to support MB's claim under Count V for Intentional Infliction of Emotional Distress ("IIED"). Defendants attempt to **prove** their defense arguments in a Motion to Dismiss. This case is still at the pleading stage. The case law Defendants cite relates to cases at the Summary Judgement stage. Regardless, as discussed below, Plaintiffs have pled accurate factual allegations. Even if this was at the summary judgment stage, an issue of fact would exist, as MB and her family knew and had known Micheal Obregon.

Defendants spend a lot of time and Motion space discussing the events that occurred **after** police tape had been set and after multiple other responding units had arrived. However, they completely ignore the allegations regarding what happened **before** any other responding units arrived and before the police tape had been set.

Plaintiffs pled that Micheal was shot in the front yard of the house then occupied by MB and at least one of her siblings, that MB heard the gunshots coming from the yard, and that MB knew Micheal, who was a family friend, very well. FAC ¶¶ 31-35. Plaintiffs

7

further pled that after Micheal had been shot multiple times by Gibson, MB ran outside to the place where Micheal was laying on the ground, bleeding to death. *Id* ¶ 35. Plaintiffs pled that Gibson was frozen and was not providing any medical care to Micheal, and that Gibson instead was interested in justifying his actions to a minor over prioritizing immediate medical care. *Id.* ¶¶ 36-37. MB insisted that Micheal needed medical help. *Id.* ¶ 42. MB was left with the responsibility of rolling Micheal over onto his back and trying to revive him. *Id.* ¶ 43. Plaintiffs pled that Gibson ordered MB to stand next to Micheal and not leave the scene for any reason. *Id.* ¶ 44. MB was forced to watch her friend die – she reported that Micheal was bleeding and gurgling blood and died in front of her. *Id.* ¶¶ 45-47.

      Defendants argue that on Body Worn Camera ("BWC") footage MB told officers that she did not know who Micheal was.  These statements are from a – at the time – 15-year-old girl who was in total and complete shock after already experiencing an outrageously traumatic experience. MB did walk away from the scene after responders initially arrived. However, she came back to go home and enter her house. This was a 15-year-old girl who was fearful of law enforcement after seeing Micheal die from the hands of Defendant Gibson – scared, upset, and in shock. The BWC shows that MB was upset and combative – further evidence that she was in severe emotional distress. She came back to the scene to attempt to get into her house – her safe space. When she came back, she was told that she would go to jail if she tried to get to her house. *See Reed BWC* at 24:00. MB was told she would be "removed" if she continued. *See Reed BWC* at 24:46. MB asked if she could be escorted around. *See Reed BWC* at 24:50. MB told officers that she wanted

to go to her house so she could leave through the back to get to her family. *See Reed BWC 29:50*. She was surrounded by multiple officers and deputies. *See Fox BWC* at 31:59. No officers on any of the BWC submitted by Defendants even attempted to explain to her that she could walk away. For Defendants to argue that she was not in close proximity to Micheal is untrue, as the BWC shows that she was within feet of Micheal's body. *See Reed BWC* at 26:24. No officers offered to escort her to her family until over an hour had elapsed since the shooting. Despite the recording of MB stating she did not know who the deceased was, MB knew full and well who Micheal was – the FAC would not have been pled the way it was if she had not known. A scared and traumatized 15-year-old in the presence of police – including the man who had just shot and killed her family friend – provided flawed answers, or refused to provide answers, to the police because law enforcement had just shot and murdered her family friend. This does not change the factual allegations that she knew Micheal.

As a 15-year-old at the time – after being told she would be arrested or removed, and after being surrounded by officers, MB was forced to stand in the same spot for over an hour. MB showed a complete lack of understanding of her rights. Officers should have, and easily could have, escorted her immediately to her family members. If at least three officers were able to be posted with her, one of them could have taken it upon himself to show compassion and escort a minor child to the safety of her parents – especially with a dead body of a family friend directly in her line of sight. They intentionally chose not to – which contributed to the infliction of emotional distress of MB.

"When reasonable minds could differ as to whether conduct is sufficiently extreme or outrageous, the issue goes to the jury." *Vinette v. Sun Health Corporation*, No. CIV 04-1447-PHX-SMM, at *17 (D. Ariz. June 21, 2006) (citing *Mintz v. Bell Atlantic Sys. Leasing*, 905 P.2d 559, 563 (Ariz. App. 1995)). For all the foregoing reasons, the intentional infliction of emotional distress claim is sufficiently pled to survive Defendants' Motion.

## IV. PLAINTIFFS HAVE DISMISSED THEIR SURVIVIAL ACTIONS.

Defendants note that, while Plaintiffs stipulated to dismiss their survival action claims in Counts I and IV, *see* ECF No. 28 at 1:25, the wrongful death and battery claims in the FAC (Counts I and IV) are still brought "on behalf of the Estate." FAC ¶¶ 79, 117. Plaintiffs did not intend to reassert any survival action claims under A.R.S. § 14-3110 in Count I of the FAC, and to the extent, if any, that Count I does so, this was due to inadvertence or typographical error. Additionally, Count IV, for Battery against Gibson and Lamb, was also inadvertently left in the FAC, and Plaintiffs recognize that it should have been removed.

## V. CONCLUSION

For all the foregoing reasons, this Court should deny Defendants' Motion to Dismiss, or in the alternative, allow Plaintiffs to further amend to address anything this Court deems appropriate.

///

///

///

10

**RESPECTFULLY SUBMITTED** this 25th day of October 2024.

**MILLS + WOODS LAW, PLLC**

By  */s/ Sean A. Woods*
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Kathleen L. Wieneke
kwieneke@wienekelawgroup.com
Laura Van Buren
lvanburen@wienekelawgroup.com
**WIENEKE LAW GROUP, PLC**
lrasmussen@wienekelawgroup.com
mmahler@wienekelawgroup.com
1225 W Washington St., Ste. 313
Tempe, Arizona 85288
*Attorneys for Defendants*

  */s/ Ben Dangerfield*