Kathleen L. Wieneke, Bar #011139
Laura Van Buren, Bar #031669
WIENEKE LAW GROUP, PLC
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: lvanburen@wienekelawgroup.com

*Attorneys for Defendants Lamb and Gibson*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| ALLISON OBREGON, an individual; ALLISON OBREGON on behalf of and as legal guardian and parent of her minor child, MC; ALLISON OBREGON as pending personal representative of THE ESTATE OF MICHEAL OBREGON; MEAGAN BRADY, individually; MEAGAN BRADY on behalf of and as legal guardian and parent of her minor child, MB;<br><br>Plaintiffs,<br><br>v.<br><br>MARK LAMB and JANE DOE LAMB, husband and wife; BRADY GIBSON and JANE DOE GIBSON, husband and wife; JOHN AND JANE DOES 1-X,<br><br>Defendants. | NO. 2:24-cv-01510-PHX-KML<br><br>**DEFENDANTS LAMB AND GIBSON'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

Plaintiffs' Response to Defendants' Motion to Dismiss fails to meaningfully address any of the arguments raised by Defendants. As set forth in that Motion, and further discussed below, the Court should dismiss:

- Count I (wrongful death), to the extent it is based on a theory of negligence, and to the extent it contains a survival action;
- Count III (gross negligence) in its entirety;
- Count IV (battery) in its entirety;
- Count V (MB's IIED claim) in its entirety;
- Any state-law claims brought on behalf of the Estate of Michael Obregon.

**I.    PLAINTIFF OBREGON'S NEGLIGENCE-BASED STATE LAW CLAIMS FAIL**

**A.    *Ryan v. Napier* Precludes Any Claim for Failure to Use Nonlethal Force**

Plaintiff Obregon attempts to salvage her state law claims by alleging that Deputy Gibson was grossly negligent "in not using non-lethal force that was readily available." *See* Doc. 39, Response at 4:27 (quoting FAC ¶ 111). But our courts have consistently held that pre-shooting tactical decisions do not create viable negligence claims. *See Davis v. City of Glendale*, 2023 U.S. Dist. LEXIS 145672, *16-17 (D. Ariz. Aug. 18, 2023) ("failure to use less-lethal responses before resorting to deadly force" is noncognizable as a negligent use of force claim); *Weber v. City of Kingman,* No. 1 CA-CV 21-0063, 2022 Ariz. App. Unpub. LEXIS 398, 2022 WL 1468246, at *2 (Ariz. App. May 10, 2022) (holding that negligence claims grounded in "preshooting tactical decisions" are precluded by *Ryan*); s*ee also Torres v. Maricopa County*, No. 1 CA-CV 23-0768, 2024 Ariz. App. Unpub. LEXIS 865, 2024 WL 4442857, at *1 (Ariz. Ct. App. Oct. 8, 2024) (failure to deescalate is not a separate negligence claim).

*Torres* is persuasive here. The plaintiffs in that case claimed that the pre-shooting mishandling of a domestic violence call "set the stage for the later preventable intentional shooting" and further alleged that "permitting a separate negligence claim for the pre-shooting conduct does not run afoul of the principles set forth in *Ryan*." *Id*. The pre-shooting conduct alleged in *Torres* was a failure to "defuse and de-escalate," wait for backup, wait for nearby K-9 units, clear space to take cover, and control the suspect with non-fatal means. *Id*. at *7. The *Torres* court rejected the plaintiffs' arguments, holding that "[t]he deputies' pre-shooting conduct here did not constitute negligence separable from the immediately-ensuing intentional shooting," and therefore, the plaintiffs' negligence-based claims failed. *Id.* at *10. For the same reasons, all of Plaintiff Obregon's negligence-based claims arising out of the intentional use of force—including the pre-shooting decision to not use a TASER—fail.

**B.    Plaintiff Obregon's Claim Regarding Provision of Medical Care Fails**

**1.    It Was Not Included in Plaintiff's Notice of Claim**

Plaintiff Obregon alleges that her NOC sufficiently put Defendants on notice of her current allegations of failure regarding provide medical care. Not so. The NOC does that Deputy Gibson was "was just standing over [Micheal] in a frozen state" and "not performing life-saving measures on [him]," and that he had to be "forcefully told [ ] that [Micheal] needed medical help." (Ex. 4 of Defs' Motion to Dismiss at 3). It does not, however, allege that the provision of medical care (or any lack thereof) caused or contributed to Obregon's death. Indeed, there is no mention of failure to render aid as a legal basis for liability. *See* Ex. 4 at 4-6.  The failure to include this specific theory in the NOC is fatal. *See Olivas v. Yavapai County*, No. 1 CA-CV 23-0637, 2024 Ariz. App. Unpub. LEXIS 790, *10 (App. Sep. 10, 2024) (lawsuit allegations that a prisoner died because officers did not conduct security checks and detect his fentanyl intoxication failed because the NOC asserted a completely different basis of liability—failure to screen inmate *at intake* and detect *alcohol intoxication*).

**2.    A.R.S. § 12-611 Bars the Claim**

Plaintiff's claim for delay in providing medical care claim is alleged as a wrongful death pursuant to Arizona's wrongful death statute, A.R.S. § 12-611. This statute requires that a death be caused by a "wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages…." *See* A.R.S. § 12-611. Here, Plaintiff alleges no facts that the so called "failure" to provide medical aid actually caused or contributed to Obregon's death. Therefore, this portion of the claim fails.

**3.    The Court May Properly Consider the BWC Footage Showing Prompt Medical Provision**

Plaintiffs misapprehend the scope of *Scott v. Harris*, 550 U.S. 372, 380 (2007), limiting its application to summary judgment motions. But courts can and will consider body camera in ruling on motions to dismiss, even if that footage was not attached to the

complaint, if it is central to the allegations. In *J.K.J. v. City of San Diego*, 17 F.4th 1247, 1254 (9th Cir. 2021), for example, the Ninth Circuit affirmed the district court's decision to review body camera video on a motion to dismiss and reject conclusory allegations contradicted by the video. In *Muhaymin v. City of Phx.*, No. CV-17-04565-PHX-SMB, 2019 U.S. Dist. LEXIS 26819, at *8 (D. Ariz. Feb. 20, 2019), the court considered video submitted by the defendant in a Rule 12 motion without converting it to a Rule 56 motion where the video was a matter of public record and not disputed. *Id*. at 7. Likewise, in *Covert v. City of San Diego*, No. 15cv2097 AJB (WVG), 2017 U.S. Dist. LEXIS 42662, at *14 (S.D. Cal. Mar. 23, 2017), the court considered body worn camera video at the motion to dismiss stage, even though the plaintiff objected "that the alleged excessive force occurred happened during a time that was not caught on the [video]," because the video revealed the circumstances surrounding the plaintiff's claims and the authenticity of the video was not contested. *Id*. at 13-14. *See also Raudelunas v. City of Vallejo*, 2022 U.S. Dist. LEXIS 20193 (E.D. Cal. 2022) (considering body camera on a motion to dismiss because the plaintiff referenced and relied upon the video and did not dispute its authenticity or accuracy).

This Court, therefore, may consider the body camera footage submitted by Defendants, which directly contradicts Plaintiffs' assertions that (1) Deputy Gibson did not provide medical aid, and (2) that MB suffered emotional distress (discussed further below).

## II. PLAINTIFF BRADY'S IIED CLAIM FAILS

Taking the allegations in the FAC as true, MB did not witness the shooting. (FAC at ¶ 33) Indeed, she was safely in her house at the time the shots were fired. *Id.* at ¶ 33, 35. The Response to the Motion to Dismiss admits this as well. (*See* Resp. at p. 8).

Like in *McKee v. State*, 241 Ariz. 377 (App. Div. 1 2016), MB did not allege any conduct that was directed specifically toward her—such as that Defendants intended to cause *her* emotional distress, or recklessly disregarded the near certainty that such distress would result to *her*. As in *McKee*, MB "discover[ed] later what has occurred." Restatement (Second) of Torts § 46(2) & cmt. 1. Plaintiff Brady cites no Arizona case which involved

an IIED claim that allowed a claimant to recover for observing the aftermath of an injury to another where the plaintiff was not physically harmed.

Further, the conduct necessary for an IIED claim must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Torres v. Maricopa County*, No. 1 CA-CV 23-0768, 2024 Ariz. App. Unpub. LEXIS 865, at 13 ¶ 27 (App. 2024). In *Torres*, the court affirmed a trial court determination that "no reasonable juror could find the deputies' conduct was extreme and outrageous" when they had engaged decedent "with firearms after he assaulted [a deputy]" with a wrench "while yelling 'die, motherfucker!'", even with decedent's relatives looking on. *Id*. at ¶ 28.

Here, the responding officers' body worn camera captured what MB experienced. She did not see the shooting, she did not stand near decedent at length, and after leaving the scene, she returned by her own choice. (Defendants' Motion to Dismiss at 10:13-17). She denied knowing Obregon, did not ask to move away from his body, and the only emotion she showed was anger and frustration and not being able to cross through the crime scene (where Obregon lay) and return to her house. This is not enough to establish an IIED claim. See *Pankratz v. Willis*, 155 Ariz. 8, 18, 744 P.2d 1182 (App. 1987) (citing Restatement § 46 cmt. d) (stating that conduct "may be otherwise tortious, and even illegal, and not be outrageous.")

### III.   PLAINTIFFS CONCEDE THE SURVIVAL CLAIMS IN COUNT I AND IV MUST BE DISMISSED

Plaintiffs concede that any survival action claim in Count should be dismissed, and that Count IV should be dismissed in its entirety. The Court should dismiss these claims.[1]

---

[1] To the extent Count I is allowed to proceed as a battery claim, Sheriff Lamb should be dismissed from that claim, as Plaintiff Obregon failed to respond to Defendants' arguments regarding immunity under A.R.S. § 12-820.05. Therefore, she has waived any opposition to his dismissal.

## IV. CONCLUSION

Based on the foregoing, the Court should dismiss following portions of the First Amended Complaint:

- Count I (wrongful death), to the extent it is based on a theory of negligence, and to the extent it contains a survival action;
- Count III (gross negligence) in its entirety;
- Count IV (battery) in its entirety;
- Count V (MB's IIED claim) in its entirety;
- Any state-law claims brought on behalf of the Estate of Michael Obregon.

DATED this 12th day of December, 2024.

          WIENEKE LAW GROUP, PLC

By: */s/ Laura Van Buren*
Kathleen L. Wieneke
Laura Van Buren
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
*Attorneys for Defendants Lamb and Gibson*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Robert T. Mills
Sean A. Woods
MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiffs*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is NOT a registered participant of the CM/ECF System:

N/A

By:  */s/ Lauren Rasmussen*