**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allison Obregon, et al., | No. CV-24-01510-PHX-KML |
| Plaintiffs, | **ORDER** |
| v. | |
| Mark Lamb, et al., | |
| Defendants. | |

Plaintiffs Allison Obregon and Meagan Brady bring multiple claims against Pinal County Sheriff Mark Lamb and deputy sheriff Brady Gibson. The claims stem from the events surrounding the death of Micheal Obregon, which occurred after Gibson conducted a traffic stop. Allison Obregon, Micheal's widow, asserts claims for wrongful death, gross negligence, battery, and excessive force. She brings those claims individually, as the widow and personal representative of the Estate of Micheal Obregon, and as the mother of a minor child. Brady asserts a claim for intentional infliction of emotional distress ("IIED") against Gibson on behalf of her minor child, MB.

Defendants move to dismiss the claims for gross negligence, battery, wrongful death (to the extent it is based on negligence), and any survival actions asserted by Micheal's estate. Gibson moves to dismiss the IIED claim. Plaintiffs agree the battery and survival actions should be dismissed, so they are. The gross negligence, wrongful death, and IIED claims may proceed.

## I. Background

On March 16, 2023, Micheal was riding his motorcycle to a friend's home. (Doc. 30 at 3.) As he rode onto his friend's property, Gibson pulled up behind him and turned on his lights to pull Micheal over. (Doc. 30 at 3.) After a discussion, Micheal ran away from Gibson. (Doc. 30 at 4.) Gibson then pulled out his gun and began firing at Micheal, who was hit and fell to the ground. (Doc. 30 at 4.)

The shooting took place in the front yard of a house then occupied by MB. (Doc. 30 at 4.) She heard the gunshots coming from the yard and ran outside to where Micheal was lying on the ground. (Doc. 30 at 5.) She saw Gibson standing frozen over Micheal, not performing life-saving measures. (Doc. 30 at 5.) MB insisted that Micheal needed medical help at which point Gibson walked away to his patrol vehicle "leaving MB with the responsibility of rolling Micheal over onto his back and trying to revive him." (Doc. 30 at 5.) Gibson returned with an emergency medical kit and "ordered MB to stand next to Micheal and not leave the scene for any reason." (Doc. 30 at 5.) Brady alleges Gibson thus forced MB to stand there while Micheal was "bleeding and gurgling blood" before he died.[1] (Doc. 30 at 5.)

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a

---

[1] Defendants dispute what happened after these events. They set forth their own set of facts, purportedly supported by the body camera footage from officers who arrived on the scene later, which they attach as exhibits to their motion to dismiss. (Doc. 33 at 2–5.) Gibson's body camera footage, if it exists, was not provided. Defendants allege the court can consider the other body camera footage without turning their motion to dismiss into a motion for summary judgment. (Doc. 33 at 5–6.) The court need not resolve this dispute because, as the defendants acknowledge, critical aspects of plaintiffs' claims rely on what happened before other officers arrived on the scene. (*See* Doc. 33 at 7 (acknowledging plaintiffs "will likely argue" a critical event happened before the body camera footage started).) Confined to the facts alleged in the complaint that are not even possibly contradicted by the body camera footage, all of the relevant claims survive.

defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64.

**III. Analysis**

Allison concedes her claim for battery against Gibson and Lamb should be dismissed, so it is dismissed. (Doc. 39 at 10.) Plaintiffs also state they did not mean to assert any survival actions—which defendants believe they asserted in their wrongful death claim by bringing the claim "on behalf of [Micheal's] Estate" (Doc. 33 at 11)—so those too are dismissed. At issue, then, is only defendants' motion to dismiss Allison's wrongful death claim to the extent it is based on a theory of negligence, defendants' motion to dismiss Allison's gross negligence claim, and Gibson's motion to dismiss Brady's IIED claim. The motion to dismiss these claims is denied.

**A. Wrongful Death and Gross Negligence**

Defendants contend Allison's wrongful death and gross negligence claims are based in part on Gibson's allegedly negligent use of intentional force.[2] (Doc. 33 at 6–7.) In Arizona, the "negligent use of intentionally inflicted force" is not a cognizable claim, as Allison concedes. (Doc. 39 at 4.) *See Ryan v. Napier*, 425 P.3d 230, 236 (Ariz. 2018). But a plaintiff may plead negligence claims based on conduct that is "independent of the intentional use of force" and may plead negligent and intentional torts as alternative theories if the evidence would support either. *Id.* at 233, 238. Allison argues the complaint does both. (Doc. 39 at 4.) Specifically, as to negligence theories independent of the intentional use of force, she alleges Gibson was grossly negligent by "failing to

---

[2] Allison has also pleaded intentional conduct as a basis for her wrongful death claim (Doc. 39 at 4) and defendants have not moved to dismiss that as a basis for her claim (Doc. 33 6–7). *See Ryan v. Napier*, 425 P.3d 230, 238 (Ariz. 2018) (allowing plaintiffs to "plead negligence and battery as alternative theories if the evidence supports each theory"); *Yearick v. Leatham*, No. 22-16310, 2023 WL 5928486, at *3 (9th Cir. Sept. 12, 2023) (assuming an Arizona wrongful death claim "was based on the intentional tort theory of battery").

provide needed medical care to Micheal" after he was shot and "in not using non-lethal force that was readily available." (Doc. 39 at 4.)

Starting with the failure to provide immediate medical care, Arizona has "formally adopt[ed]" the Restatement's duty to aid another harmed by an actor's conduct. *La Raia v. Superior Ct. In & For Maricopa Cnty.*, 722 P.2d 286, 290 (Ariz. 1986) (quoting Restatement (Second) of Torts § 322 (1965)). The Restatement states: "If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm." *Id.*; *see also Alcombrack v. Ciccarelli*, 363 P.3d 698, 701–02 (Ariz. Ct. App. 2015); *Maldonado v. S. Pac. Transp. Co.*, 629 P.2d 1001, 1004 (Ariz. Ct. App. 1981). A comment to this section of the Restatement "further clarifies the existence of a separate and distinct duty to render assistance" to someone the actor harmed. *Maldonado*, 629 P.2d at 1004; *id.* ("It is clear that a separate duty to render aid exists regardless of whether [the actor's] original misconduct was intentional or innocent or whether it was the legal cause of any further harm suffered."). In alleging Gibson knew he caused Micheal bodily harm and therefore had a duty to exercise reasonable care afterwards by rendering aid to prevent further harm, the complaint sufficiently states a negligence theory independent from the intentional use of force. *See Ryan*, 425 P.3d at 233.

Defendants do not dispute the existence of this duty, instead arguing the body camera footage does not support its breach and it cannot be the basis for a claim because Allison failed to include it in her notice of claim ("NOC"). (Doc. 33 at 7–8.) The court has already addressed the defendants' arguments regarding the footage and that analysis applies here.[3] *See supra* note 1. As to the NOC, "[c]ompliance with the notice provision of § 12–821.01(A) is a 'mandatory' and essential' prerequisite" to an action against a public entity or employee," and plaintiffs who do not strictly comply with

---

[3] As to medical aid specifically, defendants concede they did not provide body camera footage from Gibson or anyone else from immediately after the shooting which would contradict Allison's allegations. (Doc. 33 at 7.)

§ 12-821.01(A) are barred from bringing suit. *Salerno v. Espinoza*, 115 P.3d 626, 628 (Ariz. Ct. App. 2005). The NOC must "contain facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed." A.R.S. § 12-821.01(A). In stating "Gibson was not performing life-saving measures on Obregon[,]" MB was left alone "with the responsibility of rolling [Micheal] onto his back and trying to revive him[,]" and Obregon died as a "direct and proximate result" of this conduct (Doc. 33-1 at 7, 11), Allison's NOC was sufficient here.[4]

"The claim statute anticipates that government entities will investigate claims, and the supporting facts requirement is intended to be a relatively light burden on claimants, just enough to facilitate the government's investigation." *Yollin v. City of Glendale*, 191 P.3d 1040, 1048 (Ariz. Ct. App. 2008) (citation omitted). Courts have found a plaintiff complied with the statute when their NOC provided minimal facts in support of their eventual claim. *See Augusta Ranch Ltd. P'ship v. City of Mesa*, No. 1 CA-CV 08-0162, 2009 WL 1482219, at *5 (Ariz. Ct. App. May 26, 2009) (holding NOC sufficient when asserting a trespass claim because "[t]he claim letter provided that 'the City of Mesa has on numerous occasions and for many years trespassed'"); *Crockett v. Maricopa Cnty. Sheriff's Off.*, No. 1 CA-CV 12-0253, 2013 WL 1320450, at *2 (Ariz. Ct. App. Apr. 2, 2013) (holding NOC sufficient when it was "similar to the complaint[ ]" and made one relevant factual allegation). Allison's NOC complied with A.R.S. § 12-821.01(A) by giving facts "sufficient to permit" defendants "to understand the basis upon which liability [was] claimed[ ]" for Micheal's death, including Gibson's failure to provide him with immediate medical care. (*See* Doc. 33-1 at 7, 11.) Defendants' motion to dismiss this as a basis for Allison's gross negligence claim is therefore denied.[5]

---

[4] Defendants attached Allison's NOC to their motion to dismiss, plaintiffs cited to it, and plaintiffs did not argue its attachment was improper, so the court considers it.

[5] Although it does not appear Allison is asserting wrongful death premised on a delay in providing medical care (*see* Doc. 30 at 9 ("Gibson caused the wrongful death of Micheal by his unlawful act of shooting Micheal as alleged herein in violation of Gibson's duties.")), defendants argue in their reply that A.R.S. § 12-611 bars a wrongful death claim premised on a delay in providing medical care. (Doc. 44 at 3.) This argument is not considered because arguments raised for the first time in reply are waived. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111 n.1 (9th Cir. 2000), *rev'd on other grounds by* 535 U.S. 391 (2002).)

1    Defendants also move to dismiss the wrongful death and gross negligence claims
2  to the extent they are based on Gibson's negligent use of intentional force in not choosing
3  less-lethal methods. (Doc. 33 at 6.) But "[a] motion to dismiss under Rule 12(b)(6)
4  doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply
5  whether the complaint includes factual allegations that state a plausible claim for relief."
6  *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015); *see also Doe v. Napa*
7  *Valley Unified Sch. Dist.*, No. 17-CV-03753-SK, 2018 WL 4859978, at *2 (N.D. Cal.
8  Apr. 24, 2018) (declining defendants' attempt to "try to reframe Plaintiff's negligence
9  claim as three separate claims, and then mov[ing] to dismiss two of Plaintiff's three
10 theories of negligence."); *Franklin v. Midwest Recovery Sys., LLC*, 18-CV-02085-JLS,
11 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) (collecting cases). The court therefore
12 need not address the viability of different negligence theories in the gross negligence
13 claim or the viability of a negligence theory in the wrongful death claim. Both claims
14 may proceed.[6]

### B. IIED

16   Brady, on behalf of MB, brings an IIED claim against Gibson based on him
17 ordering MB to stand by Micheal and "not leave the scene for any reason" which resulted
18 in MB being "forced to watch" Micheal bleed, gurgle blood, and die in front of her. (Doc.
19 39 at 8.) The required elements for an IIED claim are that (1) "the conduct by the
20 defendant must be 'extreme' and 'outrageous;'" (2) "the defendant must either intend to
21 cause emotional distress or recklessly disregard the near certainty that such distress will
22 result from his conduct;" and (3) "severe emotional distress must indeed occur as a result
23 of defendant's conduct." *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). Gibson
24 argues the facts pled "do not rise to the level needed to meet any of the three prongs set
25 forth in *Ford*[.]"[7] (Doc. 33 at 11.) He is incorrect and the claim may proceed.

---

[6] Defendants argue Lamb could not be vicariously liable for gross negligence via respondeat superior if the claim were dismissed, but because it is not and defendants advance no other arguments for dismissing the vicarious liability claim, it may proceed.
[7] Gibson also argues body camera footage disproves some of the facts Brady alleges (Doc. 33 at 7), but the disputed facts are irrelevant to resolving this claim. Even if the footage were considered, the IIED claim would survive because it involves events that

For a defendant's conduct to be sufficiently "extreme and outrageous" to warrant liability, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not suffice. *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 500 (Ariz. Ct. App. 1982) (quoting Restatement (Second) of Torts § 46 cmt. d). Brady has plausibly pleaded conduct that, if proven, a reasonable jury could find sufficiently "extreme and outrageous." Forcing a 15-year-old to stand by a person who has been shot and is gurgling blood could be "regarded as atrocious, and utterly intolerable in a civilized community." *Ford*, 734 P.2d at 585 (quoting Restatement (Second) of Torts § 46 cmt. d.); *see also Stoker v. Hartford Life & Accident Ins. Co.*, 355 F. Supp. 3d 893, 899 (D. Ariz. 2019) ("Courts should not dismiss IIED claims if reasonable minds could differ about whether the conduct is sufficiently outrageous.") (simplified).

Gibson contends Brady has not plausibly pleaded the second element of an IIED claim in that she has not alleged Gibson intended to cause MB emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct. (Doc. 44 at 4.) Although Brady has not provided factual allegations to support her claim that Gibson intended to cause MB emotional distress, she has plausibly alleged reckless disregard despite not directly naming it as such. That failure does not prevent the claim going forward if the facts support the theory. *See Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004), *as amended* (Oct. 18, 2004) (declining to dismiss the complaint, despite its failure to explicitly cite the statute under which relief was sought); *Am. Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781, 786 (9th Cir. 1982) (holding district court did not err in ruling on a claim that was not expressly spelled out in the complaint). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."

---

occurred before those depicted by the footage. *See supra* note 1.

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002) (simplified). Here, Brady has asserted facts that are consistent with Gibson recklessly disregarding the near certainty MB would suffer emotional distress as a result of his actions, so Brady's IIED claim will not be dismissed on this ground.

Gibson does not meaningfully argue Brady has failed to allege MB suffered severe emotional distress as a result of his conduct. (*See* Docs. 33 at 10–11, 44 at 4–5.) And Brady has so alleged. (*See* Doc. 30 at 6 ("MB suffered severe mental and emotional anguish, trauma, and distress as a result of . . . being forced [to] remain with Micheal's dead body while he bled to death"); 13 (MB was "forever traumatized" and "suffered severe emotional distress which has physically manifested in weight loss, nightmares, migraines, and behavioral changes" as a result of Gibson's conduct).) Gibson's motion to dismiss Brady's IIED claim is denied.

## IV. Conclusion

Allison's battery claim and any asserted survival actions are dismissed. Allison's wrongful death and gross negligence claim may proceed, as may Brady's IIED claim.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 33) is **GRANTED IN PART** and **DENIED IN PART**.

Dated this 31st day of March, 2025.

Honorable Krissa M. Lanham
United States District Judge