Kathleen L. Wieneke, Bar #011139
Laura Van Buren, Bar #031669
WIENEKE LAW GROUP, PLC
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: lvanburen@wienekelawgroup.com

*Attorneys for Defendants Lamb and Gibson*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Allison Obregon, an individual; Allison Obregon on behalf of and as legal guardian and parent of her minor child, MC; Allison Obregon as pending personal representative of the Estate of Micheal Obregon; Meagan Brady, individually; Meagan Brady on behalf of and as legal guardian and parent of her minor child, MB;<br><br>Plaintiffs,<br><br>v.<br><br>Mark Lamb and Jane Doe Lamb, husband and wife; Brady Gibson and Jane Doe Gibson, husband and wife; John and Jane Does 1-X,<br><br>Defendants. | NO. 2:24-cv-01510-PHX-KML<br><br>**DEFENDANTS' *DAUBERT* MOTION REGARDING PLAINTIFFS' AUDIOLOGY EXPERT, ANTHONY SOLA** |

Defendant Lamb and Gibson move to preclude Plaintiffs' expert Anthony R. Sola of ACS Acoustical Consulting Services, LLC ("ACS") from offering opinions and testimony in opposition to Defendants' summary judgment motion or at trial because he lacks the necessary qualifications to assist the jury, his auditory opinions lack a factual basis and are purely speculative as applied to the facts, and his opinions lack any scientific basis or reliable methodology.

Plaintiffs offer Mr. Sola to corroborate a witness who claims to have heard a remark by Deputy Gibson while located a quarter mile away from the shooting. Yet, Mr. Sola's report does not establish that he is qualified to render such an opinion: his formal education is in business and mathematics, and neither his report nor his curriculum vitae discloses

where, how, or even if he was trained in acoustics. Mr. Sola admits that the volume of Deputy Gibson's (alleged) statement, as well as the hearing level of the listener, are the two primary factors that govern audibility, yet he measured neither. His entire methodology was to stand at the listening location one evening, listen to a single shout from a colleague, and without any actual data specific to the supposed speaker and listener, conclude that it is "*entirely possible*" the witness could have heard the remark. Sola utilized no specialized knowledge or expertise in coming to his conclusions, and his uninformed speculation about what the witness 'possibly' heard will only serve to intrude on the jury's credibility determinations.

Mr. Sola's opinions fail to meet the requirements of Rule 702 and should be excluded.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    LEGAL STANDARD

For expert testimony to be admitted under Rule 702, it must be both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1999).* Rule 702 embodies an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline. *Id*. at 591. The offering party bears the burden to establish the admissibility of the expert testimony, and it is the trial court's obligation to act as a "gatekeeper." *Daubert,* 509 U.S. at 597. To determine whether the expert's proposed testimony is relevant and reliable, the trial judge must perform a preliminary assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts." *Daubert,* 509 U.S. at 592-93; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999).

Rule 702, in its current version, states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

2

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 was amended to correct some courts' prior inaccurate application of the Rule. As the Committee Notes to the 2023 Amendment state, "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. Committee Not. (1) (effective Dec. 1, 2023).

Expert testimony is "relevant" if it fits the facts of the case and logically advances "a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms, Inc.* (*Daubert II*), 43 F.3d 1311, 1315 (9th Cir. 1995). Expert testimony, however, is not properly admitted if the expert is offered as an advocate rather than to provide a scientifically supported opinion. *See Arrendondo v. Uniroyal Goodrich Tire Co.*, 1995 U.S. Dist. LEXIS 19943, *7 (D. Ariz. 1995), citing *United States v. Rincon*, 28 F.3d 921, 923 (9th Cir. 1994). Subjective or intuitive guesswork are appropriate grounds to reject an expert opinion. *See O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1105-07 (7th Cir. 1994). Rule 702 requires that an expert back up his opinion with specific facts. *Guidroz-Brault v. Mo. Pac. R.R. Co.,* 254 F.3d 825, 831 (9th Cir. 2001) (affirming exclusion of three experts whose opinions were not grounded in fact), quoting *U.S. v. Various Slot Machines*, 658 F.2d 697, 700 (9th Cir. 1981).

Several factors can assist the Court in determining the reliability of the expert's opinions, including: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (citing *Daubert,* 509 U.S. at 592-94).

3

An expert's opinion may be excluded where, as is the case here, it is based on subjective beliefs or unsupported speculation. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that a trial court may properly exclude *ipse dixit* opinions where there is simply too great an analytical gap between the data and the opinion). "Experts must explain precisely how they went about reaching their conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field." *Daubert II*, 43 F.3d at 1319. An expert is not permitted to give an opinion simply based on his "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; see *also Joiner*, 522 U.S. at 146.

Further, expert testimony generally does not help the jury "when it offers nothing more than what lawyers for the parties can argue in closing arguments." *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004). Nor does expert testimony help a jury if it does not "fit" the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004). And an expert may not intrude on the province of the jury by rendering opinions that require no specialized knowledge and that the jury can evaluate on its own, and "cannot give an opinion as to her legal conclusion, i.e. an opinion on an ultimate issue of law." *Mukhtar v. Cal. State Univ*, 299 F.3d 1053, 1066 (9th Cir. 2002) (amended by 319 F.3d 1073).

## II.    FACTUAL BACKGROUND

### A.    The Officer Involved Shooting

On March 16, 2023, at or around 6:35 PM, Defendant Deputy Gibson shot the decedent Michael Obregon after Obregon pointed a gun at him. Deputy Gibson was not equipped with body worn camera, but Ring surveillance camera recorded some of the interaction between the two. There was no sound recorded on the Ring camera. The weather was clear and dry, and it was dark.

4

**B.      Sola's Background and Experience**

Plaintiffs retained ACS and Mr. Sola to determine whether a shout "could be audible and intelligible at approximately 1270'." (Ex 1, Sola Report at OBREGON_000890.)  Mr. Sola's formal education is in business. He obtained a Master of Business Administration, a Bachelor of Business Administration, and asserted that he completed undergraduate coursework as a mathematics major but did not obtain a mathematics degree. (Ex. 2, Sola CV at OBREGON_000895.) He founded ACS Acoustical Consulting Services, LLC in 1995 and has worked there since; although his CV states that his experience dates to 1990, it identifies no employer, position, or acoustics work before he started his own firm. (*Id*.) The CV does not describe his role at ACS, other than President/Owner, and only asserts that he was 'involved in' 5,000 projects. The CV reports full membership in the Institute of Noise Control Engineering "by education, qualifications and passing a professional exam," but does not identify the education or qualifications on which that membership rests, and it lists no degree, license, or formal training in acoustics, physics, or audiology. (*Id*.)

**C.      Sola's Report and "Analysis"**

Sola's February 2, 2026 Report consists of just 4 pages. (*See* Ex. 1). He describes his role as being asked to "determine if a shout could be audible and intelligible at approximately 1270 feet" because during the officer involved shooting, "the officer shouted a sentence that a witness claim was intelligible to them approximately 1270' from the incident." (Ex 1 at OBREGON_000890). He documents the distance in the area in his Report as follows:

*See image on next page*



(Ex 1 at OBREGON_000893).

Mr. Sola concludes that: "**It is entirely possible that the shout the night of the incident was audible and intelligible at the listener location**." *Id.* at OBREGON_000892. In forming this opinion, Mr. Sola conducted an onsite experiment on January 26, 2026, at 7:00 PM. He placed a male at the address of the shooting as the "source" location, and Sola himself went to the location where the witness supposedly heard the shots and the alleged statement. *Id.* The other male shouted, "**Hey Tony, can you hear me?**" *Id.* Sola could, in fact, hear him. *Id.* That is the entirety of Sola's experiment and methodology. *Id.*

Sola's report states that "[t]wo of the primary factors that influence voice audibility and intelligibility are how loud the speaker is and the hearing health of the listener." *Id.* Sola acknowledges, however, that **he did not know how loud the officer shouted or the hearing health of the listener on the night of the shooting**. *Id.* From his single test, he opines only that "[i]t is entirely possible that the shout the night of the incident was audible and intelligible at the listener location." *Id.*

6

### III.   MR. SOLA'S OPINIONS FAIL TO SATISFY RULE 702

#### A.   Mr. Sola Lacks Qualifications to Render Audiology Opinions

Mr. Sola describes himself as a 62-year-old male with "diminished hearing." *Id.* at OBERGON_000891. He is not an audiologist. He has no licenses, certifications, or evidence of completion of the national Praxis Exam in Audiology.  Indeed, his Report admits he would need to retain an audiologist to test his own hearing as a later supplement. *Id.*

#### B.   Mr. Sola's Opinions Are Not Based Upon Sufficient Facts and Data, As Required by Rule 702/*Daubert*

Mr. Sola's shouting test is backed by no scientific methodology or testing protocol and is incapable of replication.  He devised the protocol for the shouting test on his own, with no peer review to assess its accuracy, reliability, or basis in sound scientific methods.

The shouting test was conducted nearly three years after the March 16, 2023 incident under different atmospheric conditions than existed that night. *Id.* at OBREGON_000891–892. Mr. Sola used himself as a stand-in for the "listening" witness, whom he understood to be a "younger female" whose actual hearing he never tested. *Id.* at OBREGON_000891.)

Mr. Sola's report states that "[t]wo of the primary factors that influence voice audibility and intelligibility are how loud the speaker is and the hearing health of the listener." *Id*. Even assuming that this represents a correct description of a reliable methodology in use within the field, Mr. Sola's opinion is undermined by his own admission that he does not know how loud the officer shouted or the hearing health of the listener.  *Id.* at OBREGON_000892.

The name, age and other identifying information from the other participant in the test is unknown and the test was not videotaped or recorded. Thus, the test is incapable of being replicated based on the data in the Report.

The only attributable data in the report are the decibel readings he took of his volunteer shouting in 2026, without any comparable data on the volume of Deputy Gibson's voice on the night in question, which is unknown and unknowable. The data from his

subjective demonstration only proves that Mr. Sola could hear his volunteer's shout – nothing more, nothing less. It has no application to Deputy Gibson or any of the witnesses and what they claim to have heard.

The Ninth Circuit's decision in *Guidroz-Brault* is on point. There, the court affirmed exclusion of an engineering expert's opinion that assumed a fact with no support in the record, holding that the opinion "was properly excluded because it was not sufficiently founded on facts." 254 F.3d at 831. The same is true here. Without evidence of how loudly Deputy Gibson actually spoke, and without any measurement of the witness's actual hearing, only "the *ipse dixit* of the expert" connects Mr. Sola's opinion to the facts of this case. *Joiner*, 522 U.S. at 146.

**C.      Mr. Sola's Opinions Are Not Relevant of Helpful to the Jury**

Mr. Sola's ability to hear a shout made by an unknown person on a night other than the night in question, and his speculation that "[i]t is entirely possible that the shout the night of the incident was audible and intelligible at the listener location" is ambiguous, inconclusive, and not helpful to the jury in resolving any issue. Whether the female witness heard certain things that night is a credibility question for the jury.  "Testimony regarding another witness's credibility is inadmissible." *United States v. Betancourt-Betancourt*, 39 F. App'x 483, 485 (9th Cir. 2002) (citing *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989)). Credibility questions are left solely to the province of the jury. *S.E.C. v. Todd*, 642 F.3d 1207, 1217 (9th Cir. 2011).

Further, whether it is "possible" that the female witness heard the alleged statement fails to meet the evidentiary standard of a reasonable degree of scientific probability. Mr. Sola's opinion about the possibility the female witness could hear words has no evidentiary support and is nothing more that sheer speculation.  *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding an expert is not permitted to give an opinion simply based on his "subjective belief or unsupported speculation."); *Daubert*, 509 U.S. at 590; *see also United States v. Benson*, 941 F.2d 598, 604 (7th Cir.1991) (rejecting expert testimony regarding the purpose of a transaction because "[m]uch of [the expert's] testimony consists

8

of nothing more than drawing inferences from the evidence that [the expert] was no more qualified than the jury to draw"); *Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 1802066, at *8 (N.D.Ill. May 7, 2012) (finding that "the jury is fully capable of considering the issue of intent based on the evidence presented at trial").

Probable, not merely possible, is the appropriate standard. Anything less is irrelevant and unhelpful to the jury.

### D.    The Court Should Also Exclude the Testimony Under Rule 403.

Independently, the danger of unfair prejudice, confusing the issues, and misleading the jury substantially outweighs any marginal probative value of Mr. Sola's opinion. *See* Fed. R. Evid. 403. Decibel measurements, sound-level meters, and the imprimatur of an "acoustics expert" carry an aura of scientific precision that this one-time, subjective listening exercise does not earn. Presenting that material to corroborate a contested witness invites the jury to treat a bare "possibility" (resting on unknown speaker volume and unknown listener hearing) as scientific proof that Deputy Gibson made the statement and the witness heard it. That risk of confusion and unfair prejudice substantially outweighs whatever slight probative value the opinion retains and provides an additional, independent basis for exclusion.

## IV.    CONCLUSION

Plaintiffs cannot demonstrate that Mr. Sola is qualified, that his opinion will help the trier of fact, that it is based on sufficient facts or data, or that it is the product of a reliable methodology or will be helpful to the jury. Indeed, his "entirely possible" opinion is unduly prejudicial and harmful. For these reasons, the Court should exclude his opinions and testimony in their entirety.

///

///

///

9

DATED this 22nd day of June, 2026.

WIENEKE LAW GROUP, PLC

By:   */s/ Laura Van Buren*
Kathleen L. Wieneke
Laura Van Buren
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
*Attorneys for Defendants Lamb and Gibson*

10

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Robert T. Mills
Sean A. Woods
MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiffs*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is NOT a registered participant of the CM/ECF System:

N/A

By:   */s/ Lauren Rasmussen*

11