# EXHIBIT A

# PINAL COUNTY SHERIFFS OFFICE

Deputy Report for Incident 230316206

**Nature:** FIELD INTERVIEW

**Location:** C33

**Address:** W MESCALERO DR & N HUALAPAI DR CASA GRANDE AZ

**Offense Codes:** ASPF

**Received By:** N VERSTEEG **How Received:** O **Agency:** PCSO

**Responding Officers:** B GIBSON, M BEDROSSIAN, G SANDERS, T HELIN, Z WHEELER, J DIENERT, G RIVEROLL, I INIGUEZ, T PICKETT, G KINDSVATER, MI RANSOM, AN ROMERO, W ABBIATTI, J MONTOYA, C SANTOS, AD MILLER, J GARIBAY, F SLOUP, W MAY, GLENN MORRISON, L APARICIO, 1173, R JESS, J SOTO, A CARRILLO, J SANCHEZ, S GRASSEL, J CLINE, B MERKLEY, D MCCALL, P DUDISH, J VILLEGAS, B GAY, A CONVERSE, F ESTRADA, M FENDER, C NARDELLI, E McLOUGHLIN, RA GONZALES, K FALES, K CHARLES, C SCHMIDLIN, R PROSSER, L RABB, J BONUCCI, C BURGESS, D ERICKSON, D TAYLOR, M TAYLOR, IAN MACFIE, R ORTEGA

**Responsible Officer:** J BONUCCI **Disposition:** CLO 07/26/23

**When Reported:** 19:01:19 03/16/23 **Occurred Between:** 19:00:00 03/16/23 and 19:05:00 03/16/23

**Assigned To:** J BONUCCI **Detail:** HOMI **Date Assigned:** 03/16/23

**Status:** CLO **Status Date:** 07/26/23 **Due Date:** 03/16/23

**Complainant:** 3590334

**Last:** GIBSON **First:** BRADY **Mid:**

**DOB:** 06/17/93 **Dr Lic:** **Address:** 971 N JASON LOPEZ CIR

**Race:** W **Sex:** M **Phone:** ( ) - **City:** FLORENCE (CITY), AZ 85132

## Offense Codes

**Reported:**

**Observed:** ASPF ASSAULT, POLICE, FIREARM:75

**Additional Offense:** ASPF ASSAULT, POLICE, FIREARM:75

## Circumstances

1HOM HOMICIDE
1TECH K FALES
OIS OFFICER INVOLVED SHOOTING
HP HIGH PROFILE

**Responding Officers:** **Unit :**

to the supplemental report completed by Detective McCall for the most accurate representation of both questions and answers regarding Megan and Arianna's interviews.

At approximately 2241 hours, I conducted a recorded interview with Mariah Brady. Refer to the recorded interview, in its entirety, for the most accurate representation of both questions and answers. Below is a synopsis of Mariah's interview.

I told Mariah I was aware that an incident occurred at her residence and then asked for her to explain what occurred. Mariah reported being located in her bedroom when she heard a motorcycle drive onto her property. Because her family owns motorcycles, she disregarded it; however, shortly after, Mariah observed "him" drive the motorcycle by her bedroom window and proceed into the backyard before hearing the motorcycle turn off. Mariah later identified "him" as being Michael. Mariah could not provide a last name for Michael, but advised he was a family friend. Mariah believed Michael was there either to work on the motorcycle being that the tools were located in the backyard or to inquire if Charlie (unknown last name) was home. Charlie resided in a trailer that is situated on the property. Mariah advised at first she thought it was Charlie until she noticed the motorcycle was red in color as it was near her bedroom window. Mariah said Michael was the only person she knew that operated a red motorcycle.

After approximately one (1) minute, Mariah heard the motorcycle start up and pass by her bedroom. Mariah heard the motorcycle turn off then the front gate open. Shortly after, Mariah heard the gate close and the motorcycle turn on for approximately fifteen (15) seconds. Mariah then observed a patrol vehicle pull up to her residence and heard an Officer yell "Michael please get on the ground." Michael turned off the motorcycle and as he was getting off, she heard (5) gunshots. Mariah advised as this transpired, she observed and heard the entire incident from her bedroom window. Mariah indicated from her bedroom window, she had visual to the front where everything occurred, but no visual into the back yard.

Mariah ran outside to inquire as to what occurred and was told by the Deputy that Michael pulled a gun. Mariah advised when she witnessed what transpired from her bedroom window, she never observed Michael holding a gun, did not observe him throw a gun nor did she observe a gun lying on the ground when she was outside. Mariah requested for the Deputy to render aid due to Michael "gargling on his own blood." The Deputy proceeded to his patrol vehicle, activated his lights and sirens then obtained a first aid kit. The Deputy began cutting Michaels clothes then radioed for backup.

Michael's brother and brother's wife were in the area, but were prohibited to see Michael nor were they being informed as to what occurred. Mariah proceeded to their location and relayed that Michael was being resuscitated. After speaking to Michael's family members, Mariah proceeded back to her residence to check on her siblings since her mother was not home. Due to it being a crime scene, Mariah was not permitted to do so. Mariah understood and then asked if she could be escorted to a different location. The Deputy told Mariah no, then "trapped" her into a corner and "basically allowed her to watch Michael die." A Deputy told Mariah to "shut her damn mouth." Mariah asked the Deputy who he thought he was to tell her "to shut her damn mouth" and that she had the right to speak. The Deputy placed his hand on his gun and Mariah responded by asking the Deputy if he was going to shoot her. The Deputy smirked, shook his head and walked away. Mariah commented that Michael did not

possess a gun and believed he was shot for no reason. Mariah advised the Deputies were unprofessional and something needed to be done.

INITIAL INTERVIEW WITH: Allison Obregon

On March 17, 2023 at approximately 0057 hours, Detective McCall and I arrived at [redacted]. This address was where Michael and [redacted] purpose for us being at Michael's residence was to speak to Allison. We had negative contact at the residence.

Detective McCall was able to obtain Allison's telephone number. Upon telephonic contact, Allison advised she was located at her mother's residence at [redacted] and agreed to speak with us. We [redacted]. address at approximately 0139 hours.

Detective McCall conducted the interview with Allison. Refer to the supplemental report completed by Detective McCall for the most accurate representation of both questions and answers regarding Allison Obregon's interview.

CONCLUSION:

As of authoring this report, I have no further information to report. If I take further action in this investigation, it will be detailed in a supplemental report.

CASE STATUS:

Closed